[Civ. No. 7294.    Fourth Dist.    Mar. 25, 1964.]

SUNLIGHT ELECTRIC SUPPLY COMPANY, Plaintiff and Respondent, v. ARTHUR H. McKEE et al., Defendants and Appellants.

Yale, Wilson, Summers & Yale, William A. Yale, Bertram McLees, Jr., County Counsel, and Joseph Kase, Jr., Deputy County Counsel, for Defendants and Appellants.

Gray, Cary, Ames & Frye, J. Clifford Wallace, F. P. Crowell and Gerald R. Schmelzer for Plaintiff and Respondent.

FINLEY, J. pro tem.*—This appeal involves a stop-notice proceeding brought under the provisions of section 1190.1 et seq. of the Code of Civil Procedure. It resulted in a judgment for plaintiff-respondent Sunlight Electric Supply Company.

McKee Construction Company was awarded the prime contract for construction of an elementary school. Velmic, the electrical subcontractor, purchased supplies from plaintiff-respondent, incorporated them into the school and was paid by McKee, but failed to pay respondent for a major portion of the supplies. McKee's written contract with Velmic expressly authorized Velmic's purchase of the necessary electrical fixtures and supplies. Appellant maintains, however, that this authorization created no privity, direct or otherwise,

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

between McKee as the general contractor and respondent as the supplier of Velmic.

On November 28, 1961, respondent served a stop-notice on the San Diego Unified School District and the San Diego County Auditor pursuant to the provisions of California Code of Civil Procedure, section 1190.1. On December 13, 1961, McKee filed a release of stop-notice bond in which McKee and the surety promised that if plaintiff recovered on its claim under the stop-notice that they would pay the claim together with costs of suit. Respondent filed this action against McKee, the school district and Velmic. Velmic defaulted and took bankruptcy. Judgment was awarded against McKee and the school district and McKee appealed, with the school district joining so that all affected parties would be before the court. ██ As an indemnifier under the release of the stop-notice bond, McKee had the duty and the right to defend the action in the name of the school district and to assert defenses of the district. (Civ. Code, § 2778; *Dutil* v. *Pacheco,* 21 Cal. 438 [82 Am. Dec. 749].)

Respondent's complaint was filed March 7, 1962. A notice of pendency dated March 6, 1962 was served March 21, 1962, on the school district, the county auditor and the county controller. Section 1197.1, subdivision (b), of the Code of Civil Procedure requires a notice of pendency to be served upon the true owners of the property within five (5) days of the commencement of a stop-notice proceeding.

The trial court found substantial compliance with this statute in respondent's service of such notice within fourteen (14) days after commencement of the action. Appellant states that the sole issue to be resolved in this appeal is whether compliance with the statutory requirements of section 1197.1, subdivision (b), of the Code of Civil Procedure is a necessary prerequisite to the rendition of a judgment in favor of the materialman in a stop-notice proceeding. Appellant contends that strict compliance is jurisdictional while respondent urges that it is not. The issue thus presented appears to be one of first impression.

Appellant observes that "A stop-notice proceeding is related to, but differs from, a mechanics lien action or a claim against the work of improvement or a claim against a contractor's bond. ..." ██ It is a cumulative remedy and although related to is indepedent of the mechanic's lien foreclosure procedure. (*Calhoun* v. *Huntington Park First Savings & Loan Assn.,* 186 Cal.App.2d 451, 459 [9 Cal.Rptr.

479] ; *Rossman Mill & Lumber Co., Ltd.* v. *Fullerton Savings & Loan Assn.*, 221 Cal.App.2d 705, 708 [34 Cal.Rptr. 644].)

■ As to the public work aspect, there can be no lien for labor or supplies on property belonging to the public and used for public purposes. (*United States Fid. & Guar. Co.* v. *Oak Grove Union School Dist.*, 205 Cal.App.2d 226, 230 [22 Cal.Rptr. 907].) To allow such would produce unthinkable results which could seriously affect the public interest. In order to give protection to materialmen and labor claimants and yet protect the public and public property the Legislature has, on public works projects, provided the stop-notice procedure without lien rights for intercepting funds due from a public agency to the contractor. The underlying objective, whether with the lien privilege on private works or without it on public works, is the same. ■ The mechanic's lien law including the stop-notice provisions is an integrated and harmonious scheme and applicable code sections must be construed together. It "is remedial in character, and should be liberally construed in its entirety with a view to effect its objects and to promote justice." (*Hendrickson* v. *Bertelson*, 1 Cal.2d 430, 432 [35 P.2d 318] ; *Nolte* v. *Smith*, 189 Cal.App.2d 140, 144 [11 Cal.Rptr. 261, 87 A.L.R.2d 996].) There would seem to be no cogent reason why all rules applicable to both should not apply with equal effect to both in the absence of specific legislative mandate to the contrary.

■ The various steps and time requirements as to filings and services of notice are for the purpose of providing protective measures and a necessary warning to those to whom notice is to be given or upon whom service is to be made. If the time provisions are not complied with and as a consequence injury results to the entity or a legal claimant under the entity upon which service is required then it would stand to reason that a strict compliance with the requirement could properly be insisted upon by the servicee. ■ But if no right of the servicee or any person or entity who could legally claim under the servicee is adversely affected by failure to comply with the time for service requirement, then the requirement unless made so by specific mandate, is not a jurisdictional factor requiring the collapse of any remedy of which such notice or service forms a part. (*Patten-Blinn Lumber Co.* v. *Francis*, 166 Cal.App.2d 196 [333 P.2d 255]. See also Code Civ. Proc. § 1196.1; *Nolte* v. *Smith*, *supra*, 189 Cal.App.2d 140; and *Fredericksen* v. *Harney*, 199 Cal.App. 2d 189 [18 Cal.Rptr. 562].)

■ In this action there is no showing that appellant suffered any detriment at all occasioned by respondent's failure to serve the notice of pendency of the action upon the school district within the five (5) days. Nothing is shown to have happened within the extended period which could be considered as even remotely affecting any right or interest of appellant. Appellant, McKee, had already paid Velmic apparently without checking with Velmic's suppliers, or at least with respondent, to see if Velmic had paid for the materials furnished. Appellant argues that it should not have to pay twice. Such misfortunes are always regrettable, of course, but if one of two innocent parties must suffer the party who was neglectful in protecting its own interests cannot demand legal protection against this suffering at the expense of the other who otherwise would be the sufferer.

The trial court found the facts as outlined above and as a conclusion of law found that respondent had "adequately complied with all the provisions of California Code of Civil Procedure, section 1197.1, subdivision (b)." Under the facts and circumstances of this case the trial court must be sustained in this finding for unless some detriment can be shown to have resulted to the complaining litigant from a failure to file the notice of pendency within the five (5) days as outlined in Code of Civil Procedure, section 1197.1, subdivision (b), the requirement is not mandatory but merely directory and does not result in a divestiture of jurisdiction.

The judgment is affirmed.

Coughlin, Acting P. J., and Brown (Gerald), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 20, 1964.